CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 9 2008

JOHN F. CORCORAN, CLERK
BY: /s/ 
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES E. SMITH, <br>    Plaintiff, | ) <br> ) <br> )   Civil Action No. 7:07cv0058 |
| v. | ) <br> ) |
| MICHAEL J. ASTRUE, <br> COMMISSIONER OF SOCIAL SECURITY <br>    Defendant. | )  By:  Hon. Michael F. Urbanski <br> )       United States Magistrate Judge <br> ) |

## MEMORANDUM OPINION

Plaintiff Charles E. Smith ("Smith") brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's ("Commissioner") final decision denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").

The parties consented to the Court's jurisdiction on July 18, 2007 and the case is before the Court on cross motions for summary judgment. Following the filing of the administrative record and briefing, oral argument was held on December 11, 2007. As such, the case is now ripe for decision. Having reviewed the record, and after briefing and oral argument, the decision of the Administrative Law Judge ("ALJ") must be affirmed.

I.

The Court may neither undertake a <u>de novo</u> review of the Commissioner's decision nor re-weigh the evidence of record. <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a

reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## II.

Smith was born on July 9, 1956 and is a high school graduate who completed two years of college. (Administrative Record [hereinafter "R."] 62, 99) Smith previously worked as a machinist from March 3, 1985 to September 2001. (R. 93). From 2001 to 2004, Smith did not work due to a knee surgery. (R. 116) From November 2004 through January 2005, Smith worked as a machinist for Salem Precision Machine. (R. 116) Smith filed an application for disability insurance benefits on August 8, 2005. (R. 62) Smith's application alleges a disability onset date of January 24, 2005 due to lower back and leg pain occurring because of degenerative disc disease. (R. 15, 18) Smith's claim was denied initially on September 26, 2005 and upon reconsideration on December 8, 2005. (R. 15) An ALJ held an administrative hearing by video teleconference in this matter on June 22, 2006, (R. 240-275), and issued a decision on October 23, 2006 finding Smith not disabled. (R. 15-22) The Appeals Council denied Smith's request for review on January 10, 2007, rendering the decision final. (R. 7-9)

## III.

Smith argues that the ALJ's decision is not supported by substantial evidence and must be reversed because the ALJ gave little weight to the opinions of his treating physicians, Drs. Sadler and Leipzig, that Smith is disabled from all work. The Commissioner contends that the

2

disability opinions of the physicians are not supported by clinical and laboratory findings and are inconsistent with other substantial evidence in the record. After reviewing the administrative transcript and having heard oral argument the Court finds that the decision of the Commissioner must be affirmed.

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p.

The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence

3

in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Court finds that the ALJ considered and properly weighed Drs. Sadler and Leipzig's opinions that Smith is incapable of maintaining substantial gainful employment. Before discussing each opinion, however, the Court notes that an opinion that an individual is disabled and therefore unable to work is not a medical opinion. Rather, it is an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of the case. 20 C.F.R. § 404.1527(e).

During a visit to Dr. Sadler on March 29, 2005, Smith complained of constant lower back pain. (R. 162, 167) As a result, Dr. Sadler ordered an MRI of Smith's back which revealed "fairly significant facet degenerative disease" on his left-side and "early disk degenerative changes at L4-5 and L5-S1." (R. 128) Dr. Sadler referred Smith to Dr. Leipzig, who saw Smith on April 21, 2005. (R. 187-88) Dr. Leipzig's notes indicate that Smith's "[r]eflex, sensory and motor testing is normal all levels bilaterally with the exception of a mild left S1 sensory deficit. Straight leg raise and bowstring sign are negative.[1]" (R. 187) Dr. Leipzig recommended a lumbar fusion for Smith and carefully explained that the surgery may not necessarily remove all pain but should alleviate some of the pain. (R. 187) Smith agreed to the surgery which was scheduled for June 21, 2005. (R. 140-43)

On that date, Dr. Leipzig performed a transforaminal posterior lumbar interbody fusion at L5/1, a posterolateral spinal fusion at L4/5 and L5/1, a segmental pedicle screw fixation, and a

---

[1] Straight leg raising and bowstring sign are tests conducted to determine root tension and irritation that leads to radiating pain, negative results indicate no root tension or irritation. See C. DAVID TOLLISON ET AL., PRACTICAL PAIN MANAGEMENT 400-01 (Lippincott, Williams & Wilkins, 3rd ed. 2002).

4

Left L4/5 facetectomy. (R. 140) The surgery was performed without any problems or complications and Dr. Leipzig discharged Smith on June 24, 2005. (R. 144)

The notes following Smith's operation are telling as to Smith's post-operative progress and improvement. Smith was seen by Dr. Leipzig's physician's assistant, David Cossaboon ("Cossaboon"), in July, August, October and November 2005.[2] (R. 183-85, 216) During the July 5, 2005 visit, Smith reported that he had no complaints and that "his leg pain has completely resolved." (R. 185) Despite having "some mild numbness and tingling" he "noted significant improvement postoperatively." (R. 185) Cossaboon noted that Smith was progressing well. (R. 185) Cossaboon again saw Smith on August 25, 2005, at which time Smith complained of "mild pain over the left greater trochanteric region and mild muscular lower back symptoms." (R. 184) Despite this, Smith again "noted significant improvement postoperatively" and Cossaboon again noted that Smith was "doing well." (R. 184) On October 17, 2005, Smith told Cossaboon that "the symptoms that he had prior to surgery have resolved." (R. 185) Smith indicated that he was having good days and bad days and had troubling sleeping, but that he was doing well. (R. 185) The final visit in the record by Smith to Cossaboon was on November 21, 2005. (R. 216) Smith informed Cossaboon that he was "doing extremely well" and "overall has seen a significant change post-surgery." (R. 216) Less than five months after his surgery, the medical evidence of records shows that Smith progressed well post-operatively with a significant reduction in pain.

From November 29, 2005 through March 29, 2006 Smith underwent physical therapy at Spine and Orthopedic Rehab with Eric Reichardt. (R. 203-215, 217-24) Smith attended

---

[2] Smith was evaluated by Cossaboon with "the full knowledge of Dr. James Leipzig. The diagnosis, treatment, intervention, and any restrictions are per Dr. Leipzig's specific recommendations." (R. 183-84, 216)

5

physical therapy three times a week initially. Smith reported decreased pain during four visits between December 7 and 19, 2005. Smith, however, simultaneously reported pain and difficulty in putting his shoes and socks on. (R. 204-206) On December 28, 2005 Smith reported improvement despite slow progress. (R. 207) By January 5, 2006, Smith reported that he felt well enough to put on shoes and socks which continued through his treatment. (R. 208) On February 6, 2006 Smith's physical therapy notes reveal that he was still having trouble lying on his stomach. (R. 217) By February 13, 2006 Smith reported that it was "now less difficult for him to lie on his stomach." (R. 218) From February 15, 2006 through March 29, 2006 Smith reported increasing pain in his hip for reasons unbeknownst to him. (R. 219-24) Smith reported that this pain decreased as a result of decreasing his activity around the house from March 20, 2006 through March 29, 2006. (R. 224)

On January 26, 2006, Dr. Leipzig saw Smith for a follow-up. (R. 225) Dr. Leipzig's notes indicate that Smith reported that "his leg symptoms are resolved. His back pain is better, but he does still have some symptoms in the evening." (R. 225) On physical examination, Dr. Leipzig noted that Smith demonstrated "nontender lumbar spine." (R. 225) Dr. Leipzig's impression of Smith at this point was that Smith was doing well overall and he was "pleased with [Smith's] response to surgery to date." (R. 225)

Dr. Leipzig saw Smith again on May 3, 2006 and his notes from this visit cannot be ignored in making a disability determination. (R. 226) Smith reported that he has "some stiffness in the low back at times," but "[o]verall he is much improved from preoperative status." (R. 226) On physical examination, Smith forward flexed relatively well and stood upright

6

without difficulty. (R. 226) Dr. Leipzig decided to liberalize his precautions during this visit and indicated that Smith could once again engage in motorcycle riding.[3] (R. 226)

On July 31, 2006, nearly three months after Dr. Leipzig last saw Smith, he filled out a Medical Source Statement of Ability to Do Work-Related Activities. (R. 235-238) Dr. Leipzig opined that Smith could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, could stand and/or walk less than two hours in an 8-hour workday, and could sit for two hours in an 8-hour workday. (R. 235-36) Dr. Leipzig also indicated that Smith would be restricted in pushing and/or pulling in his lower extremities. (R. 236) Dr. Leipzig also opined that Smith would be limited by his need to avoid vibrations. (R. 238) When asked what medical/clinical findings support the limitation, Dr. Leipzig simply wrote vibration.[4] (R. 238)

On June 5, 2006, Dr. Sadler filled out another such form. (R. 229-32) Dr. Sadler opined that Smith could occasionally lift/carry less than ten pounds, could not frequently lift/carry any amount, could intermittently stand and/or walk two hours in an 8-hour workday, and could sit for four hours in an 8-hour workday while periodically alternating between sitting and standing to relieve pain. (R. 229-30) Dr. Sadler also noted that Smith could never climb, balance, kneel, crouch, crawl, or stoop. (R. 230) Dr. Sadler indicated that Smith would be limited by his need to avoid vibrations, temperature extremes, humidity/wetness, and hazards such as machinery or heights. (R.232)

---

[3] Smith argues that despite being released by his treating neurosurgeon to ride his motorcycle, Smith has not felt well enough to ride. Regardless of Smith's subjective views, his treating neurosurgeon felt comfortable enough with Smith's recovery to allow him to ride a motorcycle.

[4] The ALJ recognized that it appears incongruous that in his clinical notes Dr. Leipzig would release Smith to ride a motorcycle while noting in a work-related medical source statement that he needed to avoid vibrations.

7

The ALJ, after thorough consideration, found that Dr. Leipzig's and Dr. Sadler's opinions on these forms were "not supported by progress notes." (R.20) Specifically, the ALJ found these opinions to be in conflict with the medical evidence of Smith's surgical recovery which indicated good progress with minimal to no pain. (R. 20) The notes from Smith's physical therapy, as well as those from physician's assistant Cossaboon and Dr. Leipzig himself, all point to a strong post-operative recovery that had a dramatic effect on alleviating Smith's pre-operation pain symptoms. The ALJ found that Smith "was released to ride his motorcycle, a fact which is contraindicative, in and of itself, of the degree of disability to which Dr. Leipzig and Dr. Sadler opine." (R. 20) Given the extent of Smith's progress following his surgery as reflected in the medical records, there is ample reason for the ALJ to find that the disability opinions of Drs. Leipzig and Sadler were not entitled to controlling weight.

Instead, the ALJ credited the opinions of the state agency reviewing physicians, Drs. Williams and Johnson, as to Smith's residual functional capacity. (R. 180) Drs. Williams and Johnson reviewed all the medical records and opined that Smith could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, could stand and/or walk about six hours in an 8-hour workday, and could sit for about six hours in an 8-hour workday. (R. 176) They also opined that Smith would be limited in pushing and/or pulling with his lower extremities. (R. 176) Drs. Williams and Johnson also noted that Smith could occasionally climb, balance, kneel, crouch, crawl, or stoop. (R. 177) In terms of environmental limitations, neither doctor opined that Smith would need to avoid vibrations. (R. 178)

At the administrative hearing, the ALJ used the opinions of Drs. Williams and Johnson in posing a hypothetical to the Vocational Expert ("VE"). (R. 268-69) The VE testified that such an RFC describes work in a "fairly broad range of the light exertional level," and that numerous

8

jobs exist in the national economy that Smith could perform. (R. 269) The ALJ crafted Smith's RFC consistent with the opinions of Drs. Williams and Johnson. (R. 19) The ALJ "accorded greater weight" to the opinions of Drs. Williams and Johnson, over the opinions of Drs. Sadler and Leipzig, because "such opinions are more consistent with the overall medical evidence in this case." (R. 20)

The ALJ satisfied his duty to examine all the medical evidence of record and his decision not to follow the disability opinions of Drs. Sadler and Leipzig is supported by substantial evidence. The ALJ's decision to accord little weight to the opinion of Drs. Leipzig and Sadler is not error, because the opinions are "inconsistent with the other substantial evidence in the record," specifically Smith's progress notes following his surgery. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p.

## IV.

For the foregoing reasons, the Court concludes that given the standard required for review of the Commissioner's administrative decision, this case must be affirmed. The ALJ's decision not to give controlling weight to the disability opinions of Drs. Leipzig and Sadler is consistent with the regulations because there is significant medical evidence to contradict their opinions. Accordingly, the Smith's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the Court does not suggest that Smith is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Smith's claim for

9

benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER:** This _8th_ day of January, 2008.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge